627 A.2d 292

**In re Condemnation of Lands Situated and Being in the City of Scranton, Pennsylvania, for the Elimination of Blighted Areas and the Replanning and Redevelopment of Such Area.**

**Appeal of REDEVELOPMENT AUTHORITY OF the CITY OF SCRANTON, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided June 23, 1993.

390

W. Boyd Hughes, for appellant.

Patrick J. Lavelle, for appellee.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

SMITH, Judge.

The Redevelopment Authority of the City of Scranton (Condemnor) appeals from the order of the Court of Common Pleas of Lackawanna County setting aside a jury award of $160,000 and awarding John F. Sweeney and Helen Sweeney (Condemnees) a new trial. The issue raised for review is whether the trial court abused its discretion in granting a new trial when it held that the verdict was inadequate and that the testimony of Condemnor's expert was confusing to the jury. For the following reasons the trial court's order is reversed.

On April 14, 1989, Condemnor filed a declaration of taking to acquire Condemnees' property located at 420 Lackawanna Avenue, Scranton, which consisted of a three-story brick building located on a lot measuring twenty-five feet by one hundred feet in depth. No preliminary objections were filed to the declaration of taking and a board of viewers (Board) was appointed. On October 3, 1989, the Board awarded Condemnees $245,000 for the property. Both parties appealed the Board's award and requested a de novo jury trial.

At trial, the jury conducted a view after which it heard testimony from Condemnor's expert, Patrick Sammon, that the fair market value of the building immediately prior to condemnation was $120,000. Condemnees' expert, Robert Foley, testified that the value was $300,000, and Condemnee John F. Sweeney testified that in his opinion the value of his property was $350,000. The jury returned an award in the amount of $160,000.

Condemnees filed a post-trial motion requesting a new trial and alleging, inter alia, that the jury verdict was against the law and against the weight of the evidence. The trial court granted Condemnees' motion and in its opinion stated that the Board's award was a fair indication of the amount of damages suffered by Condemnees; that Sammon's valuation testimony was confusing to the jury because he divided the sale price of comparable buildings by the number of square feet of only the first floor to arrive at a unit sales price, which method Sammon utilized because, in general, properties on Lackawanna Avenue were purchased primarily for their first-floor use; that the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101––1–903, does not provide for the method Sammon used to arrive at a fair market value; and that the "unit price valuation proffered by Mr. Sammon was not truly reflective of the amount of damages suffered by Condemnees since the entire building, and not just the first floor, was utilized by the Sweeneys and was taken in the condemnation proceedings." Trial Court Opinion, p. 6. Condemnors appealed to this Court.[1]

It is well established in Pennsylvania that a trial court abuses its discretion when it grants a new trial merely because it would have arrived at a different conclusion on the facts of the case than that reached by the jury. *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123 (1969). A new trial may be awarded on the ground that the verdict is against the weight

1. On appeal from a trial court decision in an eminent domain case, this Court's scope of review is limited to determining whether the court below abused its discretion or committed an error of law. *Fink v. Commonwealth,* 85 Pa.Commonwealth Ct. 290, 482 A.2d 281 (1984).

of the evidence only when the jury verdict is so opposed to the facts that judicial conscience cannot let the result stand. *Id.; see also Department of Transportation v. McGuire,* 41 Pa.Commonwealth Ct. 14, 399 A.2d 134 (1979). Where the case is close and the evidence contradictory, the jury must perforce be given freer rein. *Austin.* Where a trial court grants a new trial because the verdict was against the weight of the credible evidence, it transgresses the bounds of the judicial function, *Gentzel Corp. v. Borough of State College,* 13 Pa.Commonwealth Ct. 116, 318 A.2d 415 (1974), and has usurped the jury's function as factfinder. *Redevelopment Authority of the City of Philadelphia v. Nunez,* 109 Pa.Commonwealth Ct. 240, 530 A.2d 1041 (1987).

In granting Condemnees' motion for a new trial, the trial court began its analysis by citing *Mazur v. Commonwealth,* 390 Pa. 148, 134 A.2d 669 (1957), for the proposition that in condemnation cases a trial court may grant a new trial solely on the ground that the jury verdict was inadequate, but must articulate specific and valid reasons to show that the verdict was not truly reflective of the damages incurred. While this interpretation of the holding in *Mazur* is not wholly accurate, it further does not take into account the well-established principle that it is reversible error to grant a new trial where the jury's verdict falls well within the range of the testimony on value. *Fink v. Commonwealth,* 85 Pa.Commonwealth Ct. 290, 482 A.2d 281 (1984). It is clear that the trial court may not grant a new trial solely because of a disparity between the award of the board of viewers and the jury award. *Tinicum Real Estate Holding Corp. v. Department of Transportation,* 480 Pa. 220, 389 A.2d 1034 (1978).[2]

**2.** Although the amount of a board of viewers' award is not admissible into evidence at a trial de novo from an appeal of the board's award, a trial court may properly consider the amount of the award in a determination of the adequacy of the jury verdict on a motion for a new trial. *McGuire.* However, the amount of a board's award is only one factor the trial court should consider and is secondary to a review of the entire evidence presented at trial. *Id.* While a discrepancy between the award of the board of viewers and that of the jury is an appropriate factor for consideration, such a discrepancy does not, of itself, warrant the grant of a new trial. *Id.*

In this case, the Board awarded Condemnees $245,-000, whereas the jury returned an award of $160,000. Despite the trial court's statement that "the Board's award is a fair indication of the amount of damages suffered by the condemnees," the jury award nevertheless fell well within the range of the valuation testimony, i.e., Sammon's valuation of $120,000 and Condemnees' expert's valuation of $300,000. Therefore, it was improper for the trial court to grant a new trial solely on that basis.[3] By doing so, the trial court transgressed its judicial bounds.

The trial court's second basis for granting a new trial was its stated belief that the testimony of Condemnor's expert, Sammon, was not relevant or probative and only served to confuse the jury. Sammon testified that he inspected the entire building from the basement up through the third floor in the company of Condemnees and noted that it was suitable only for owner occupancy or one occupant because access to the upper floors was not readily available. Sammon stated that he weighed various factors and used the "market comparison of the direct sales comparison approach" in arriving at his valuation. He noted that in most cases, the properties in that area and on that street were purchased for their first-floor use: therefore, it would not be an equal comparison to rely solely on total square footage of like buildings. Instead, he divided the selling price of comparable properties sold in the area by the number of square feet of the first floor.

On cross-examination, he noted that his method was a unit of comparison which he typically used, especially when the comparable properties are not exactly alike, and that using units of comparison is the standard method of appraising in

---

3. Furthermore, this Court notes that the jury award in this case, which was 65% of the Board's award, was not, as a matter of law, inadequate in comparison to the Board's award. *See Tinicum* (a verdict equal to 34% of the award of the board of viewers was not inadequate as a matter of law); *Scott v. Redevelopment Authority of the City of Philadelphia,* 46 Pa.Commonwealth Ct. 171, 405 A.2d 1155 (1979) (62% not inadequate); *McGuire* (63% not inadequate); *Abrams, Inc. v. Redevelopment Authority of the City of Philadelphia,* 37 Pa.Commonwealth Ct. 343, 391 A.2d 1 (1978), *appeal dismissed,* 493 Pa. 247, 426 A.2d 91 (1981) (45% not inadequate).

the market data approach. He emphasized that other buildings used in this comparison method had been in the same or similar use as Condemnees' building at the time of the date of value.[1] In this case, Sammon's testimony was clearly probative and relevant and was thus properly admitted as valuation evidence. *See Commonwealth v. Fox*, 16 Pa.Commonwealth Ct. 23, 328 A.2d 872 (1974). In such matters, "[w]hat factors [the expert] considered, how he arrived at that opinion, and whether he made any errors are for the jury who determines his credibility and the weight of his testimony." *Department of Transportation Appeal*, 93 Pa.Commonwealth Ct. 403, 409, 501 A.2d 1172, 1175 (1985).

The trial court stated that Sammon's method failed to take into account Condemnees' use of all three floors of their building, and concluded that, "[c]learly, the approach employed by the condemnor's expert merely served to confuse the jury." In support of this conclusion, the trial court relied upon *Department of Transportation v. Nemiroff*, 42 Pa.Commonwealth Ct. 478, 401 A.2d 10 (1979), which held that where the record discloses a substantial degree of uncertainty and confusion in the minds of the jury, justice requires the granting of a new trial. However, *Nemiroff* is inapposite to the matter sub judice. In *Nemiroff*, the jury returned three times with different verdicts and each time asked numerous questions of the trial court regarding the effect to be ascribed to the condemnee's receipt of estimated just compensation, which clearly exhibited confusion over the trial court's instructions to the jury. In the present matter, the record reveals no evidence of jury confusion or uncertainty. Thus, absent any overt manifestation of jury confusion, the trial court's holding

4. The trial court also noted that nowhere does the Eminent Domain Code provide for the method used by Sammon to arrive at a fair market value for Condemnees' property. While this may be so, neither does the Code prohibit utilization of such a method. In fact, Section 705(2) of the Code, 26 P.S. § 1–705(2), provides that a qualified valuation expert may testify as to the valuation of a property in a variety of ways, and that such testimony is not limited to the enumerated methods. Further, the 1964 Comment to Section 705(2) notes that this section was "intended to take cognizance of and permit testimony of all modern appraisal methods."

"evidenced an attempt by the court to exercise the jury's factfinding function and the substitution of the court's value judgment for that of the jury." *McGuire*, 41 Pa.Commonwealth Ct. at 19, 399 A.2d at 137.

Moreover, the jury is not compelled to accept the specific amount of damages which the expert witnesses say followed the taking in an eminent domain proceeding. *Tinicum*. Where jurors viewed the condemned property, they properly could have ignored the experts' testimony if they believed them not credible, and could have based their verdict upon their own judgment following the court's instructions. *Commonwealth v. Herold*, 17 Pa.Commonwealth Ct. 148, 330 A.2d 890 (1975). In a condemnation case it is for the jury to resolve conflicts in the valuation testimony of experts which can be believed or disbelieved in whole or in part, and a jury verdict based upon a view and properly upon all the testimony will not be disturbed. *Whittaker v. Department of Transportation*, 45 Pa.Commonwealth Ct. 260, 406 A.2d 819 (1979). In appraising the expert testimony, the jury may bring to bear what it perceived with respect to the property at the time it formally viewed the property. *Poulos v. Commonwealth*, 438 Pa. 442, 266 A.2d 100 (1970).

In fact, where a jury views a site, this Court has held that the jury may base its verdict on its own judgment and disregard the expert testimony entirely. *Nunez; Borough of Tamaqua v. Knepper*, 54 Pa.Commonwealth Ct. 630, 422 A.2d 1199 (1980). Since the jury's verdict was well within the range of expert testimony and was based upon a view of the property, the trial court's grant of a new trial amounted to a judicial usurpation of the jury's province. Accordingly, the order of the trial court is reversed and the jury award is reinstated.

## ORDER

AND NOW, this 23rd day of June, 1993, the order of the Court of Common Pleas of Lackawanna County is reversed

and the award of the jury in the amount of $160,000 is reinstated.