**Sol GROSS, Trustee for Panther Hollow Corporation and Panther Hollow Corporation, Appellants,**

v.

**The CITY OF PITTSBURGH.**

**Sol Gross, Trustee for Panther Hollow Corporation and Panther Hollow Corporation**

v.

**The City of Pittsburgh, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 14, 1999.

Decided Oct. 19, 1999.

Reargument Denied Dec. 27, 1999.

---

Maurice A. Nernberg, Pittsburgh, for appellants.

George R. Specter, Pittsburgh, for appellee.

Before DOYLE, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Sol Gross, Trustee for Panther Hollow Corporation, and Panther Hollow Corporation (collectively, Panther Hollow) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) denying Panther Hollow's motion for post-trial relief and granting, in part, the City of Pittsburgh's (City) motion for post-trial relief in an eminent domain proceeding. The City has filed a cross appeal.

In August 1988, Panther Hollow entered into an agreement of sale with CSX Railroad to acquire twenty-eight acres of land located in the fourth and fourteenth wards of the City for $1,338,750.00. The closing was held on February 3, 1989. The City

issued several permits to Panther Hollow with respect to the property; however, on November 9, 1989, the City revoked those permits. (*See* Appendix 1 at 153a, 175a–76a.) Then, on December 1, 1989, the City placed concrete jersey barriers around the property, rendering the property unusable and inaccessible.

On February 14, 1990, Panther Hollow filed a petition for the appointment of viewers in the trial court pursuant to section 502(e) of the Eminent Domain Code.[1] Panther Hollow alleged therein that, by placing concrete jersey barriers around the property, the City had taken Panther Hollow's property on December 1, 1989. The City filed preliminary objections denying that its actions constituted a taking.

In November 1991, Panther Hollow filed an action in the United States District Court for the Western District of Pennsylvania, Docket No. CA 91–1895. Panther Hollow alleged that the City deprived Panther Hollow of its constitutional right to the use of its property, a violation of 42 U.S.C. § 1983, when the City revoked Panther Hollow's permits on November 9, 1989. (Appendix 1 at 153a, 175a–76a.) The federal case proceeded to trial before a jury, and, on February 26, 1996, the jury returned a special verdict in favor of Panther Hollow. The jury awarded Panther Hollow $565,824.00 in damages after determining that the fair market value of Panther Hollow's property on November 9, 1989 was $2 million without the permits and $2.5 million with the permits.[2]

During the proceedings in federal district court, the City withdrew the preliminary objections it had filed with the trial court, thereby admitting that a taking had occurred on December 1, 1989. Then, after the district court awarded Panther Hollow damages based on a fair market value of at least $2 million, Panther Hollow filed a motion for just compensation with the trial court, seeking $2 million in estimated just compensation. The trial court granted the motion on May 15, 1996, requiring the City to pay $2 million in estimated just compensation to Panther Hollow.

The matter then proceeded to a board of view, which, after a hearing, issued a report awarding Panther Hollow $2.659 million in compensation. The board of view also awarded Panther Hollow delay damages, calculated as of December 1, 1989, and forty per cent of the total award for attorney fees and expenses.

Both parties appealed from the board of view award to the trial court. In addition, Panther Hollow filed a petition asking the trial court to resolve a number of issues preliminarily or to issue a rule to show cause.[3] The trial court initially denied the petition, but, prior to the trial before a jury, the trial court did make several preliminary rulings.[4]

On January 26, 1998, the jury returned a verdict of $6.5 million. After an attempt at conciliation and hearings on the question of counsel fees, the trial court issued three orders on August 10, 1998. First, the trial court awarded $4,782,059.20 in

1. Act of June 22, 1964, Sp.Sess., P.L. 84, 26 P.S. § 1–502(e).

2. Both parties filed motions for a new trial in federal court, which were denied. The City appealed to the United States Court of Appeals for the Third Circuit, which reversed the district court, holding that no civil rights violation had occurred. The United States Supreme Court denied certiorari.

3. Section 517 of the Eminent Domain Code, 26 P.S. § 1–517, states that all objections to a board of view decision, except the amount of

the award, shall be determined by the court preliminarily.

4. The trial court determined that the only issue for the jury was the fair market value of Panther Hollow's property. The trial court also decided preliminarily that delay damages would be computed according to Pa. R.C.P. No. 238 and would run from December 1, 1989, that compensation for certain litigation expenses was denied and that a hearing would be held on the issue of attorney fees after the jury trial.

delay damages pursuant to section 611 of the Eminent Domain Code, 26 P.S. § 1–611, and Pa. R.C.P. No. 238.[5] Second, the trial court awarded counsel fees in the amount of $171,088.40, plus $8,139.69 in costs, for a total of $179,228.09. Third, the trial court awarded an additional amount for costs and expenses.

When the trial court became aware of this court's decision in *Hagan v. East Pennsboro Township*, 713 A.2d 1187 (Pa. Cmwlth.1998), the trial court determined that it had erred in its award of delay damages and vacated the August 10, 1998 orders.[6] The trial court held a hearing to determine the proper rate to use for the calculation of delay damages and, on October 29, 1998,[7] issued a memorandum concluding that the proper rate was the prime lending rate plus one per cent. The trial court ordered Panther Hollow to calculate the delay damages on that basis and to submit a bill for counsel fees incurred since the previous counsel fees hearing. Panther Hollow did so, and the City filed objections.

On December 8, 1998, after a hearing, the trial court again issued three orders. First, the trial court awarded $4,867,647.00 in delay damages. Second, the trial court awarded $193,378.40 in counsel fees, plus $8,468.88 in costs, for a total counsel fee award of $201,847.28. Third, the trial court awarded an amount for expenses. On December 9, 1998, the trial court is-

sued an opinion regarding the award of counsel fees. The trial court explained in that opinion that the counsel fee award was based on the hours submitted by Panther Hollow's attorney instead of a forty per cent contingent fee agreement between Panther Hollow and its attorney.

Both parties filed motions for post-trial relief, and argument was held on February 17, 1999. On April 9, 1999, the trial court denied Panther Hollow's motion; however, the trial court granted the City's motion to the extent that it sought relief from the $6.5 million verdict because that verdict is *against the weight of the evidence.*[8] The effect of the April 9, 1999 order is that the City gains a new trial on the issue of just compensation.

On May 14, 1999, the trial court issued an opinion in support of the April 9, 1999 order.[9] The trial court explained in its opinion that it granted a new trial to the City because the $6.5 million jury verdict was *excessive.* The trial court reached that conclusion after considering the $1.34 million purchase price, the lack of improvements on the property, the board of view's award of $2.659 million, and the district court's valuation of the property at $2.5 million. The trial court also explained its decisions with respect to counsel fees, costs and expenses and delay damages.

## I. Panther Hollow's Appeal

### A. Jury Verdict

---

5. The trial court based the award of delay damages on the verdict amount of $6.5 million from December 1, 1989 through March 25, 1997, which is when the City paid $2 million to Panther Hollow, and on the balance of $4.5 million thereafter.

6. In *Hagan,* this court held that delay damages awarded under section 611 of the Eminent Domain Code are to be calculated based on the relevant commercial loan rates prevailing during the period in question.

7. On page 4 of the trial court's May 14, 1999 opinion in this case, the trial court incorrectly states that its memorandum on delay damages was filed on October 19, 1998. The memorandum on delay damages is actually

dated October 29, 1998. (*See* Brief on behalf of Appellants, Memorandum at 4.) On page 5 of the trial court's May 14, 1999 opinion, the trial court correctly states that its memorandum on delay damages was filed on October 29, 1998.

8. In the April 9, 1999 order, the trial court gave Panther Hollow an opportunity to accept a verdict of $4 million by filing a remittitur in the amount of $2.5 million within 15 days of the order. Panther Hollow did *not* file a remittitur.

9. In its opinion, the trial court incorporated by reference its December 9, 1998 opinion on counsel fees and its October 29, 1998 memorandum on delay damages.

■ On appeal to this court,[10] Panther Hollow argues that the trial court abused its discretion or committed an error of law in granting a new trial because the jury verdict was against the weight of the evidence.[11] We agree.

■ Where it is argued that a jury's verdict is against the weight of the evidence and the jury's verdict falls well within the range of the testimony on value, it is improper for a trial court to grant a new trial. *Fink v. Commonwealth*, 85 Pa. Cmwlth. 290, 482 A.2d 281 (1984). Moreover, a trial court abuses its discretion when it grants a new trial merely because it would have arrived at a different conclusion on the facts of the case than that reached by the jury. *Appeal of Redevelopment Authority of City of Scranton*, 156 Pa.Cmwlth. 388, 627 A.2d 292 (1993), *appeal denied*, 537 Pa. 626, 641 A.2d 591 (1994). A new trial may be awarded on the ground that the verdict is against the weight of the evidence only when the jury verdict is *so opposed to the facts* that judicial conscience cannot let the result stand. *Id.*

■ Here, the $6.5 million jury verdict was well within the range of the testimony on value. Wilbur Darling and Sol Gross, testifying for Panther Hollow under section 704 of the Eminent Domain Code,[12] stated that, based on their respective examination of comparable properties, they determined that the fair market value of the Panther Hollow property was $12 million at the time of condemnation. (N.T. at 267, 308.) Charles Weisberg testified as an expert for the City that, based on his analysis, experience and investigation, he determined that the fair market value of the Panther Hollow property was $2 million at the time of condemnation. (N.T. at 374.) Because the $6.5 million jury verdict was well within the range of testimony on value, it was improper for the trial court to grant a new trial here.[13]

■ Evidently, the trial court would have arrived at a different valuation for the Panther Hollow property based on the evidence presented to the jury.[14] However, as indicated above, it is an abuse of discretion to grant a new trial on that basis. Moreover, the jury verdict here is

10. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Fink v. Commonwealth*, 85 Pa.Cmwlth. 290, 482 A.2d 281 (1984).

11. In making this argument, Panther Hollow asserts that the trial court's April 9, 1999 order and May 14, 1999 opinion are inconsistent. In its April 9, 1999 order, the trial court granted the City a new trial because the $6.5 million jury verdict was *against the weight of the evidence.* However, in its May 14, 1999 opinion, the trial court considered the board of view valuation, which is not admissible as evidence in the trial court proceedings. *See* section 703(3) of the Eminent Domain Code, 26 P.S. § 1–703(3). The trial court also considered the federal district court valuation, but the trial court instructed the jury *not* to consider that valuation as evidence. (N.T. at 477.)

12. 26 P.S. § 1–704. This section provides that the condemnee or an officer of a corporate condemnee may testify as to just compensation. This court has stated that, under section 704 of the Eminent Domain Code, the condemnee "may testify on the same basis as

a qualified expert in regard to valuation and the elements considered in arriving at his figure." *Cohen v. Redevelopment Authority of City of Philadelphia*, 12 Pa.Cmwlth. 125, 315 A.2d 372, 375 (1974). Here, Darling testified as an officer of Panther Hollow Corporation. (N.T. at 194.)

13. Indeed, the $6.5 million jury verdict appears to "split the difference" between the valuation evidence of Panther Hollow and the City.

14. The trial court states in its May 14, 1999 opinion that it considered federal district court testimony to *impeach* the $12 million valuation of Gross. (Trial ct. op. at 10.) In other words, the trial court did not believe Gross' testimony. However, the credibility of testimony on the fair market value of property is peculiarly for the jury to appraise and *not* for the trial court. *Springer v. County of Allegheny*, 401 Pa. 557, 165 A.2d 383 (1960); *George v. Department of Transportation*, 168 Pa.Cmwlth. 517, 650 A.2d 1217 (1994), *appeal denied*, 540 Pa. 634, 658 A.2d 797 (1995).

not so opposed to the facts that judicial conscience cannot let the result stand.

## B. Counsel Fees

Panther Hollow next argues that the trial court abused its discretion by awarding attorney fees under section 609 of the Eminent Domain Code [15] based on an hourly rate instead of Panther Hollow's contingent fee agreement.

■ Section 609 of the Eminent Domain Code states, in pertinent part, that: "Where proceedings are instituted by a condemnee under section 502(e), a judgment awarding compensation to the condemnee for the taking of property shall include reimbursement of reasonable ... attorney ... fees...." The reasonableness of an attorney fee award under section 609 of the Eminent Domain Code is a matter for the sound discretion of the trial court and may be disturbed by an appellate court only when there is a clear abuse of discretion. *Hagan; Department of Transportation v. Schodde*, 99 Pa.Cmwlth. 50, 512 A.2d 101 (1986) (stating that the trial court's judgment with respect to an award of attorney fees under section 609 is presumed to be correct).

■ We are not convinced by Panther Hollow's arguments that the trial court clearly abused its discretion in awarding attorney fees based on an hourly rate. In its opinion on the attorney fees issue, the

trial court accepted the hours submitted by Panther Hollow's attorney and the attorney's rate of $220.00 per hour. Based on expert testimony, the trial court deducted $6,000.00 from the total amount for clerical time charges. The trial court also deducted two per cent from the total because Panther Hollow's attorney charged in fifteen-minute intervals instead of six-minute intervals. According to expert testimony, this practice tended to inflate the bills. Thus, the trial court awarded the sum of $193,378.40 for Panther Hollow's attorney fees.[16] Awarding attorney fees based on the attorney's hourly rate, the hours submitted by the attorney and credible expert testimony is reasonable and is not an abuse of discretion.[17]

## C. Costs and Expenses

Finally, Panther Hollow argues that the trial court erred by failing to award costs and expenses for: (1) experts who did not testify at the trial; (2) architectural and engineering expenses incurred in connection with developing the subject property; and (3) interest and insurance paid subsequent to the condemnation.

Section 609 of the Eminent Domain Code states that: "Where proceedings are instituted by a condemnee under section 502(e), a judgment awarding compensation to the condemnee for the taking of property shall include reimbursement for ...

---

15. 26 P.S. § 1–609.

16. Panther Hollow suggests in its brief that the trial court should have considered the work of its attorney in three related cases: the federal civil rights case, a permit case and a tax case. However, Panther Hollow did not initiate any of these cases because of the December 1, 1989 condemnation. Therefore, Panther Hollow is not entitled to reimbursement for reasonable attorney fees incurred in those cases under section 609.

17. It is true, as Panther Hollow asserts, that a trial court *may* base a section 609 attorney fee award on a contingent fee agreement where such an award would be reasonable under all of the circumstances. *Matter of Condemna-*

*tion by Urban Redevelopment Authority of Pittsburgh of Certain Lands in Twenty–First Ward of City*, 69 Pa.Cmwlth. 621, 451 A.2d 1071 (1982) (stating that there is nothing that automatically precludes a contingent-fee percentage from producing a circumstantially reasonable amount). However, a trial court is not obligated to do so. The trial court is required only to include reimbursement of *reasonable* attorney fees in the compensation award.

In addition, we note that we are asked here only to determine how much the *City* must pay in counsel fees under section 609 of the Eminent Domain Code. Panther Hollow's attorney may seek the rest of the fees due under the contingent fee agreement from Panther Hollow.

engineering fees and other costs and expenses actually incurred." This court has stated that section 609 limits condemnees to the same category of costs and expenses that are recoverable under section 408 of the Eminent Domain Code.[18] *See In re: Condemnation by the Commonwealth, Department of Transportation,* 709 A.2d 939 (Pa.Cmwlth.1998). Given that, we shall consider the kinds of costs and expenses that are recoverable under section 408.

■■■ Section 408 allows condemnees to recover costs and expenses incurred by them "because of the condemnation proceedings." 26 P.S. § 1–408. Courts are *not* to award such costs and expenses based on just compensation requirements. *In re: Condemnation by the Commonwealth, Department of Transportation.* "[R]eimbursable costs or expenses are allowed by statute only and ... are not included or embraced within just compensation for land taken for eminent domain purposes." [19] *Id.* at 943. Thus, section 408 of the Eminent Domain Code does *not* require that a condemnee be made whole. *Id.*

**1.**

■■■ Panther Hollow first seeks reimbursement for payments to experts who did not testify at the trial. Panther Hollow retained one of the experts, James Lignelli, in the federal district court case. (N.T. at 324.) While it is true that the board of view examined Lignelli's expert report and testimony in reaching its decision, Panther Hollow did *not* incur the cost of retaining Lignelli in connection with the condemnation proceeding. Therefore, Panther Hollow may not be reimbursed for the cost under section 609 of the Eminent Domain Code.[20]

■■■ Panther Hollow retained its other expert, Bodner Real Estate Services (Bodner), to testify before the board of view instead of Lignelli. The board of view and the trial court excluded Bodner's appraisal testimony because of our previous decision in this case, *Gross v. City of Pittsburgh,* 686 A.2d 864 (Pa.Cmwlth.1996). In *Gross,* we held that the City was judicially estopped from introducing appraisal evidence in the state proceeding that was contrary to the appraisal evidence it presented in the federal proceeding. We explained that, under the doctrine of judicial estoppel, "parties" are prevented from abusing the judicial process by changing positions as the moment requires. *Id.*

Lignelli had testified in federal court that the Panther Hollow property was worth $3.75 million, but Bodner was prepared to testify that the property was worth $5 million to $5.2 million. (Board of view hearing, N.T. at 82.) Because Bodner's appraisal testimony would have altered Panther Hollow's position on the value of its property, the board of view and trial court properly excluded it. Inasmuch as this court had previously ruled that Panther Hollow could not legally present appraisal testimony in the condemnation proceeding that was contrary to the testimony presented in the federal case, *Gross,* Panther Hollow is not entitled to reimbursement for the cost of obtaining Bodner's appraisal testimony.

**2.**

■■■ Panther Hollow also seeks reimbursement for architectural and engineering expenses incurred in connection with developing the Panther Hollow property. However, the record indicates that these

---

18. 26 P.S. § 1–408.

19. The fair market value of the property immediately before and after a taking is the measure of determining just compensation, whether in de jure or de facto takings. *Id.*

20. At the trial, Panther Hollow's attorney stated: "We gave [the board of view] our expert report, the Lignelli report, and the transcript of testimony." (N.T. at 79.) The trial court responded: "What do you want? The cost of the stamp to mail the testimony in?" (N.T. at 79–80.) We believe that the trial court's rhetorical question makes the point well.

expenses were incurred *after* the condemnation in 1989 or in connection with another legal proceeding.[21] Because Panther Hollow did not incur these expenses in connection with the condemnation proceeding, Panther Hollow is not entitled to reimbursement for those costs.[22]

### 3.

Finally, Panther Hollow seeks reimbursement for mortgage interest and property insurance premiums paid subsequent to the condemnation.

 This court has permitted reimbursement for property insurance premiums under section 408 of the Eminent Domain Code. *In re: Condemnation by the Commonwealth, Department of Transportation.* We now hold that property insurance premiums are also reimbursable under section 609. Indeed, when a condemnee initiates litigation under section 502(e) of the Eminent Domain Code to determine whether there has been a de facto taking of the condemnee's property, the ownership of the property is at issue. *See* section 402(a) of the Eminent Domain Code, 26 P.S. § 1–402(a) (stating that title passes to condemnor after a taking). Where the condemnee has ownership expenses that it would not have paid absent the condemnor's refusal to acknowledge a taking, the condemnee is entitled to recover those expenses.

 Here, if the City had acknowledged a taking, then a taking would have occurred without requiring Panther Hollow to initiate section 502(e) litigation, Panther Hollow would not have had ownership of the property and Panther Hollow would not have incurred expenses for property insurance. Thus, Panther Hollow is entitled to reimbursement for property insurance premiums actually paid by Panther Hollow during the condemnation proceedings.

For the same reason, Panther Hollow is entitled to reimbursement for mortgage interest paid during the condemnation proceedings. As with the property insurance premiums, mortgage interest was an ownership expense in this case. There would have been no need for Panther Hollow to pay the mortgage interest if the City had acknowledged a taking of Panther Hollow's property when the City placed barriers around the property in 1989. Because the City failed to do so, Panther Hollow had to initiate proceedings under section 502(e) of the Eminent Domain Code, and, thus, Panther Hollow's payment of mortgage interest is reimbursable as a direct result of the condemnation proceedings.

## II. The City's Cross Appeal

The City argues in its cross appeal that the trial court erred in calculating delay damages as of December 1, 1989 because Panther Hollow remained in possession of the property and used it after that date.[23] We disagree.

 Section 611 of the Eminent Domain Code, 26 P.S. § 1–611, states that a condemnee is entitled to compensation for

---

21. Panther Hollow's architectural and engineering expenses were related either to a building permit case or to the development of the Panther Hollow property after the property was condemned in 1989. (N.T. at 75.)

22. Panther Hollow argues that, under *Gaughen v. Department of Transportation,* 123 Pa. Cmwlth. 550, 554 A.2d 1008 (1989), architectural and engineering expenses are reimbursable as long as they are related to the property. (Panther Hollow's brief at 55.) However, *Gaughen* is not applicable here. In *Gaughen,* the property owner hired engineers and architects to develop the property *before* a par-

tial taking. Here, however, Panther Hollow hired engineers and architects to develop its property *after* a *complete* taking.

23. The City contends that delay damages should run from March 27, 1996 because, on that date, Panther Hollow filed its motion for just compensation and, in doing so, tendered possession of its property to the City. The City's argument is based on section 407 of the Eminent Domain Code, 26 P.S. § 1–407, which only applies when the condemnor has filed a declaration of taking. That is not the case here.

delay in payment from the date the condemnee relinquishes possession of the condemned property or, if the condemnation is such that possession is not required to effectuate it, from the date of condemnation. A landowner is no longer considered to be in possession of property under section 611 of the Eminent Domain Code when the landowner is deprived of the full and normal use of the property. *Appeal of Jolly,* 153 Pa.Cmwlth. 539, 621 A.2d 1181, *appeal denied sub nom. Hoffman v. County of Allegheny,* 535 Pa. 676, 636 A.2d 636 (1993).

▇ In its petition for the appointment of a board of view, Panther Hollow alleged that the City erected concrete jersey barriers on Panther Hollow's property on December 1, 1989 and thereby sought to prevent Panther Hollow's use and development of the property. (*See* Reply brief on behalf of cross-appellees, Petition at paras. 7, 14.) Panther Hollow, thus, sought delay damages as of December 1, 1989. The City filed preliminary objections to the petition but subsequently withdrew them. By withdrawing the preliminary objections, the City waived any factual or legal challenge to Panther Hollow's allegations of a de facto taking on December 1, 1989. *See* Section 504 of the Eminent Domain Code, 26 P.S. § 1–504; *City of Philadelphia v. Airportels, Inc.,* 14 Pa.Cmwlth. 617, 322 A.2d 727 (1974) (stating that all disputes of fact and law should be included in the preliminary objections filed to the appointment of viewers). Therefore, under section 611 of the Eminent Domain Code, Panther Hollow is entitled to delay damages as of December 1, 1989, the date of condemnation.

▇ In the alternative, the City argues that the trial court erred in refusing to allow the City to present evidence showing that Panther Hollow was able to possess and use the property during certain periods of time after December 1, 1989. The City contends that it is entitled to an offset or suspension of delay compensation for those periods of time when Panther Hol-

low had possession and use of the property.

Section 611 of the Eminent Domain Code states that the "condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation." 26 P.S. § 1–611. The Comment of the Joint State Government Commission, from a 1964 Report, states:

> [This sentence] is included to make it clear that while the condemnee is in possession of the condemned property, he does not get delay compensation but the condemnor is not entitled to rent or other charges for use and occupancy. The reason for this is that while the condemnee is in possession, the condemnee is not building up damages for delay and the condemnor is not accruing liability for delay damages. Consequently, the delay compensation and the rent, in a sense, offset each other.

The trial court determined that this part of section 611 applies only to de jure takings. In other words, it applies only when a condemnor files a declaration of taking under section 402 of the Eminent Domain Code, 26 P.S. § 1–402, giving the condemnor the right to possession, and the condemnee *remains in possession.*

The City, relying on *In re Condemnation by Urban Redevelopment Authority of City of Pittsburgh,* 70 Pa.Cmwlth. 230, 452 A.2d 1113 (1982), argues that this part of section 611 also applies to de facto takings. It is true that *In re Condemnation by Urban Redevelopment Authority of City of Pittsburgh* involved a de facto taking, and that delay damages were *not* calculated from the date of the de facto taking. However, in that case, the condemnee actually *remained* in possession of the property after the de facto taking. Here, Panther Hollow did *not* remain in possession after the City erected concrete jersey barriers around its property. Instead, Panther Hollow returned to the property years after the condemnation

and, according to the City, operated a parking lot from July 1992 through February 1994. (N.T. at 498.)

Moreover, as stated above, a landowner is not considered to be in *possession* of property under section 611 of the Eminent Domain Code if the landowner has been deprived of the full and normal use of the property. *Appeal of Jolly.* Here, although Panther Hollow may have operated a parking lot on the property from 1992 to 1994, there is no indication in the record that this constitutes the *full and normal* use of the property.[24] Therefore, Panther Hollow did not have possession of the property under section 611 of the Eminent Domain Code during that period of time, and, accordingly, the City is not entitled to an offset or suspension of delay damages.

### III. Conclusion

Having concluded that the trial court erred in granting a new trial because the jury verdict was against the weight of the evidence, we reverse that portion of the trial court's April 9, 1999 order. Because Panther Hollow is entitled to reimbursement for mortgage interest and insurance premiums actually incurred during the condemnation proceedings, we reverse that portion of the trial court's April 9, 1999 order denying those costs and expenses. We affirm the order in all other respects.

### O R D E R

AND NOW, this 19th day of October, 1999, it is hereby ordered as follows:

1. That portion of the April 9, 1999 order of the Court of Common Pleas of Allegheny County (trial court) granting a new trial because the jury verdict was against the weight of the evidence is reversed.

2. That portion of the trial court's April 9, 1999 order denying reimbursement for mortgage interest and insurance premiums actually incurred during the condemnation proceedings is reversed.

3. This case is remanded to the trial court. On remand, within sixty days of the date of this order, the trial court shall determine the amount to be reimbursed for mortgage interest and insurance premiums and shall issue an order directing payment of that amount by the City of Pittsburgh to Sol Gross, Trustee for Panther Hollow Corporation, and Panther Hollow Corporation.

4. The trial court's April 9, 1999 order is affirmed in all other respects.

Jurisdiction relinquished.

Judge PELLEGRINI did not participate in the decision in this case.

---

**24.** The City's own expert testified that the highest and best use of the property was "for it to be developed as it was permitted under its industrial zoning." (N.T. at 360.) For example, the owners could build a warehouse on the property. (N.T. at 362.) The property "could have a *transitional* use ... for some parking." (N.T. at 360.) (Emphasis added.) However, in order to be used for parking, there would have to be an "administrative exception" under the zoning code; therefore, parking is "not an automatic use." (N.T. at 361.)