# In re Condemnation by the Redevelopment Authority of Lawrence County

C.P. of Lawrence County, no. 70083 of 2004, M.D.

*Thomas T. Frampton, Michael K. Parrish,* and *Jeffrey R. Hunt,* for condemnees.

*Samuel P. Kamin* and *John J. Arminas,* for condemnor.

PICCIONE, *J.,* December 17, 2010—Before this court for disposition is the condemnees' motion for fees and costs pursuant to statute. Thomas R. Whittaker, Christy L. Whittaker, and the Estate of David C. Hamilton (hereinafter, the "condemnees") seek payment of attorneys fees and costs in accordance with 26 Pa.C.S.A. § 306(g) of the eminent domain code. The relevant background of this case follows.

In March of 2003, Lawrence County established the Redevelopment Authority of Lawrence County (hereinafter, the "condemnor"), and through various measures taken in the following months, the condemnor demonstrated its intent to condemn the condemnees' properties.[1] During this period, the condemnees hired Attorney Michael K. Parrish of Goehring, Rutter & Boehm to represent them in the condemnation proceedings. Thomas R. and Christy Whittaker retained

---

1. Thomas and Christy Whittaker owned 83.8 acres of land within the condemned "Redevelopment Area" in Neshannnock Township, Lawrence County, Pennsylvania. They resided thereon with their children in a residence they finished constructing in 2002. David and Edna Hamilton owned 2.5 acres of land that contained a structure utilized for residential and light industrial purposes.

attorney Parrish and his law firm on an hourly basis while David C. and Edna J. Hamilton entered into a contingency fee arrangement.[2]

On July 29, 2004, the condemnor filed separate declarations of taking, condemning the condemnees' properties for the purpose of developing a business park.[3] The condemnees filed preliminary objections to the declarations of taking pursuant to § 306 of the eminent domain code, and this court conducted a twelve-day hearing over the course of six months. On June 18, 2007, this court overruled the condemnees' preliminary objection challenging the legality of the taking but sustained the preliminary objection claiming that the condemnor filed an insufficient bond with the declaration of taking. The condemnor was ordered to post bonds in the amount of $2,500,000.00 to secure the Whittaker property and in the amount of $200,000.00 to secure the Hamilton property. The parties were also ordered to apply for the appointment of a board of viewers to assess just compensation due in the instant condemnations.

The condemnees appealed to the Commonwealth Court of Pennsylvania, which found that the condemnation was not justified because no physical conditions of blight existed. *In re Condemnation by Redevelopment Authority of Lawrence County*, 962 A.2d 1257, 1265 (Pa. Commw. 2008). As a result, the Commonwealth Court reversed this court's decision and sustained the

2. David C. Hamilton died on January 26, 2005 and his wife, Edna J. Hamilton, was appointed Executrix of the Estate of David C. Hamilton on February 11, 2005.

3. The properties were condemned pursuant to Pennsylvania's Urban Redevelopment Law, which permits a Redevelopment Authority to use eminent domain for the limited purpose of eradicating blight. 35 P.S. §1702.

condemnees' preliminary objections to the legality of the taking. *Id.* The Commonwealth Court also dismissed the condemnees' preliminary objection to the adequacy of the posted security because the court's ruling rendered the preliminary objection moot. *Id.* The condemnor then filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on June 23, 2009.0 *In re Condemnation by Redevelopment Authority of Lawrence County*, 973 A.2d 1008 (Pa. 2009).

After the Commonwealth Court issued its decision, the condemnees filed the instant motion for fees and costs pursuant to statute on July 17, 2009. Hearings regarding the condemnees' motion were held on January 28, 2010, April 4, 2010, and April 23, 2010. Both parties offered expert testimony and submitted numerous exhibits detailing and analyzing the hours expended by attorney Parrish and other employees of Goehring, Rutter, and Boehm during the course of these proceedings. The condemnees claim that they incurred $1,129,555.74 in fees, costs, and expenses during the course of these proceedings.[4] The condemnees argue that they are entitled to payment for the entire sum while the condemnor asserts that they are entitled to only a fraction of the $1,129,555.74.

The current dispute is governed by § 306(g) of the Eminent Domain Code. Section 306(g) states:

(1) If preliminary objections which have the effect

---

4. According to the amended affidavits in support of reasonable attorneys fees and costs required by statute submitted on July 23, 2010, $806,096.01 in fees and costs was incurred on behalf of the Whittakers from the inception of this action to June 30, 2010; $323,459.73 in fees and costs was incurred on behalf of the Hamiltons during the same time period.

of terminating the condemnation are sustained, the condemnor shall reimburse the condemnee for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings.

(2) The court shall assess costs and expenses under this subsection. 26 Pa.C.S.A. § 306(g).

The statute "speaks in specific terms of 'appraisal, attorney and engineering fees and other costs and expenses actually incurred'; it does not speak in terms of 'general damages' that may be sustained by a condemnee or provide that a condemnee must be made whole." *In re Condemnation by the Commonwealth, Department of Transportation*, 709 A.2d 939, 944 (Pa. Commw. 1998) (interpreting 26 P.S. § 1-408).[5] "When determining statutory costs and expenses to be awarded a condemnee, the trial court may not apply just compensation requirements." *Id.* at 943 (citing *Dohany v. Rogers*, 281 U.S. 362 (1930)). Repayment of fees, costs, and expenses are permitted only if they are "actually incurred because of the condemnation proceedings." 26 Pa.C.S.A. § 306(g)(1).

The condemnor does not dispute that costs, expenses, and reasonable attorney fees are owed under § 306(g). Rather, the issue before the court is how much of the total cost of the representation should the condemnees be awarded and, more specifically, how much of the fees, costs, and expenses were "actually incurred because of the condemnation proceedings." 26 Pa.C.S.A. § 306(g)(1).

---

5. The court notes that Pennsylvania eminent domain law, formerly 26 P.S. § 1-101 et seq., was renumbered as 26 Pa.C.S.A. § 101 et seq. effective September 1, 2006.

Preliminarily, the court notes that the underlying dispute in this case involved several unique and novel issues that undoubtedly necessitated considerable research and preparation for each stage of the condemnation proceedings. Furthermore, the court is aware that the condemnees carried a heavy burden both at the trial and appellate court level when challenging the certification of blight by preliminary objection. *In re Condemnation by Redevelopment Auth. of Lawrence County*, 962 A.2d at 1260; *York City Redevelopment Authority of the City of York v. Ohio Blenders, Inc.*, 956 A.2d 1052, 1063 (Pa. Commw. 2008). As a result, the court is mindful of the difficulty of the task undertaken by the condemnees' attorneys and will consider this in analyzing the amount of hours billed, the hourly rate charged, and the reasonableness of the total sum requested.

The first issue to be addressed is the amount of fees, costs, and expenses to be awarded for the Hamilton representation. The condemnees request an award of $323,459.73 for fees, costs, and expenses incurred on behalf of the Hamiltons, but the condemnor argues that the condemnees should receive no award for representing the Hamiltons. The condemnees' figure of $323,459.73 was derived from their attorneys' billing records, which document each task completed in connection with this matter, the amount of time expended on each task, the law firm employee that performed the task, the hourly rate of the employee, the amount charged, and the client that was billed. As a result, the Hamiltons' proposed award was calculated in the same manner as that of the Whittakers, who were charged an hourly rate in accordance with their fee agreement.

The condemnor's argument that the condemnees' are entitled to nothing for representing the Hamiltons is based on the fact that the Hamiltons entered into a contingency fee arrangement with their attorney. The arrangement, which is set forth in a power of attorney executed by the Hamiltons and their attorneys, provides that the "attorneys shall receive forty (40) percent of the difference between (a) the gross sum recovered by way of settlement or other disposition, and (b) the sum of $150,000.00." Condemnees' Ex. 2. In addition, the power of attorney states that "[i]n the absence of recovery by way of verdict or settlement, the undersigned is not obligated to pay costs." *Id.* The condemnor points out that the eminent domain proceedings resulted in no monetary award for the Hamiltons and that the Hamiltons did not actually incur any expenses within the meaning of the statute.[6] As a result, the condemnor claims that § 306(g) and the terms of the power of attorney do not authorize an award of fees, costs, and expenses incurred on behalf of the Hamiltons.

When asked to award a reasonable fee based on a contingency fee agreement, the court is permitted to exercise its discretion as long as its calculations produce a reasonable award. "There is nothing that automatically precludes a contingent-fee percentage from producing a circumstantially reasonable result." *In re Condemnation by Urban Redevelopment Authority of Pittsburgh v. Kristoff*, 451 A.2d 1071, 1072 (Pa. Commw. 1982). On the other hand, "[a]warding attorney fees based on the attorney's hourly rate, the hours submitted by the attorney and credible expert testimony is reasonable and is not an

---

6. The condemnor asserts that it is undisputed that the Hamiltons have not made any payments of fees and costs to Goehring, Rutter & Boehm. condemnor's Ex. A1.

abuse of discretion." *Gross v. City of Pittsburgh*, 741 A.2d 234, 240 (Pa. Commw. 1999).[7] As a result, the court's primary responsibility is to determine a reasonable fee award and, in making its determination, may consider both the hours worked and the hourly rate of the condemnees' attorneys as well as the contingency fee arrangement.

It is well established that the reasonableness of fees charged and reimbursed is within the sound discretion of the trial court. *In re Rights of Way & Easements Situate in Derry Twp.*, 544 A.2d 551, 554 (Pa. Commw. 1988); *In re Condemnation by Urban Redevelopment Authority of Pittsburgh v. Kristoff*, 451 A.2d at 1072. In determining what constitutes a fair and reasonable fee, the court may consider the following factors:

> the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the result he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question. *In re Trust Estate of LaRocca*, 246 A.2d 337 (Pa. 1968).

The extent of a party's success is the most critical factor in determining a proper attorney fee award. *In*

---

7. The court in *Gross* also indicated that a trial court may base an attorney fee award "on a contingent fee agreement where such an award would be reasonable under all of the circumstances." *Gross*, 741 A.2d at n.17.

*re Condemnation by the Commonwealth, Department of Transportation*, 709 A.2d at n. 4 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). However, "'even where a client receives huge benefits which are directly attributable to the skills of his lawyer, there must be a limit to the amount the lawyer should be entitled to receive'... This is particularly true when the public is expected to pay for the representation." *Gross v. City of Pittsburgh*, No. GD90-02794 (C.P. Allegheny, August 10, 1998) (citing *Solid Waste Auth. v. Parker*, 622 So.2d 1010, 1014 (Fla. App. 4 Dist. 1993). "In determining reasonable attorney fees under Section 306(g), 308(d), 709 and this section, the court shall consider all the circumstances of the case, including, but not limited to, time records if available." 26 Pa.C.S.A. § 710(b).

Initially, the court concludes that it would be unreasonable to award no fees, costs, or expenses incurred on behalf of the Hamiltons merely because the Hamiltons entered into a contingency fee arrangement with their attorneys. As the condemnees argue, refusal to award fees where clients are not obligated to pay fees would result in bad public policy because it would discourage individuals who are unable to pay from challenging unlawful takings. Furthermore, the condemnees' attorneys have put in considerable time and effort toward achieving a successful result for their clients. This matter has been before this court since 2004 and has involved numerous pleadings, depositions, hearings, appeals, and other proceedings. The fact that the condemnees' preliminary objections were ultimately sustained was no doubt due to the hard work and expertise of attorney Parrish and the other individuals who participated in the representation

of the condemnees. As a result, the condemnees should receive a reasonable award of fees, costs, and expenses incurred on behalf of the Hamiltons.

Although the condemnees are entitled to fees, costs, and expenses related to the Hamilton representation, $323,459.73 would constitute an unreasonable award. It is undisputed that the Whittakers' property is substantially more valuable than the Hamiltons' property. The condemned property owned by the Hamiltons totals 2.5 acres. In contrast, the condemnees are requesting $806,096.01 for the Whittakers, who own 83.8 acres of the property. Considering the age, size, condition, and construction of their property, the Hamiltons and their attorneys should not have expected to recover a relatively substantial sum in comparison to the potential sum being sought by the Whittakers. Furthermore, the condemnation of the Whittakers' property constituted the major issue in the underlying proceedings. Attorney Parrish testified:

> Well, the Whittakers had a whole lot more to lose here. I mean, there is no question that their property is much, much more valuable than the Hamilton property. They were very concerned about losing their property and about losing it for a price that they thought was very inadequate.

> In addition to that, in my attempts to deal with the Redevelopment Authority and the Lawrence County Economic Development Corporation in resolving these cases, I attempted to deal with the Hamiltons and the Whittakers separately and they would never do that. The Whittaker case was clearly what was driving the whole litigation. The Whittakers have virtually all

the frontage, as you know, on Kings Chapel Road. The Hamilton parcel being just a small two and a half acre parcel surrounded by the Whittaker parcel.

In addition, I would also say there were a lot of issues in this case that did not have anything to do with the Hamiltons but did have to do with the Whittakers. N.T., 1/28/10, at 32-33.

Since the condemnees' attorneys' efforts were focused primarily on the representation of the Whittakers, it would be unreasonable to award as large of an amount as $323,459.73 for the representation of the Hamiltons. "The assessment of attorney's fees should be based on the efforts within the case and should be reasonable in light thereof." *Harborcreek Township v. Ring*, 570 A.2d 1367, 1372 (Pa. Commw. 1990).

Because of the importance of the Whittaker representation in relation to the Hamilton representation, as well as the difference between the condemnees' respective property values and their fee agreements, the court will not calculate the Hamiltons' award and the Whittakers' award using the same method. Specifically, the Hamiltons' award will not be a product of the hours spent on the condemnation proceedings and the fees charged by the condemnees' attorneys. Doing so leads to a patently unreasonable result. Instead, the court will award an amount that is more consistent with its analysis herein.

In an effort to determine a reasonable fee award for the Hamilton representation, the court notes that, on July 30, 2009, the condemnees filed a motion to compel

posting of bond in which they request that the court order the condemnor to post a cash bond in the amount of $275,000.00 to protect the interest of the Hamiltons. Although the condemnees' request does not suggest that the value of the Hamiltons' property is $275,000.00, it does provide a general idea of what the condemnees believed to be necessary to protect the interest of the Hamiltons.[8] It also provides some indication of the condemnees' expectations with regard to potential compensation for the Hamiltons' property. By using the method called for in the Hamiltons' contingency fee agreement[9] and treating $275,000.00 as the sum recovered, the court calculates a fee award of $50,000.00 for the Hamiltons. Considering the terms of the Hamiltons' fee agreement, the approximate value of their property, the estimated compensation they would have received had their property been successfully condemned, and the significance of the Whittaker representation in comparison to the Hamilton representation, the court finds $50,000.00 to be a reasonable fee award. Therefore, the condemnor shall pay the condemnees' attorneys $50,000.00 for fees incurred on behalf of the Hamiltons. In addition, the court awards the condemnees' attorneys $4,591.95 for costs associated with printing, shipping, filing fees, court reporters, document management services, research databases, teleconferencing, and subpoenas on behalf of

---

8. Other estimates regarding the value of the Hamiltons' property suggest that the value of the property may be significantly lower than $275,000.00. For example, real estate appraiser Dave McConahy testified that the fair market value of the Hamiltons' property was $150,000.00 as of April 4, 2003. N.T., 6/30/06, at 71.

9. Forty percent of the difference between the sum recovered ($275,000.00) and $150,000.00.

the Hamiltons.[10]

Although the court has rejected the condemnees' proposed method of calculating the Hamiltons' award, there is little dispute as to how the Whittakers' award will be determined. As stated above, the Whittakers entered into an agreement which indicated that their fee would be based on their attorneys' hourly rates. Therefore, through reference to the condemnees' attorneys' time records, the Whittakers' award shall be based on their attorneys' hourly rates and the hours spent representing the Whittakers.

Initially, the condemnor argues that the rates charged by the condemnees' attorneys were unreasonable. When the representation of the Whittakers commenced in June of 2003, attorney Parrish's rate was $225.00 per hour. N.T., 4/5/10, at 26. That rate gradually increased by between two and six percent per year with the result that attorney Parrish is now charging $300.00 per hour. Id. at 27; condemnees' Fee Hr'g Ex. 12. Attorney Jeffrey R. Hunt charged between $135.00 and $180.00 per hour for his services during the condemnation proceedings. N.T., 4/5/10, at 26-27.

The condemnor argues that these hourly rates are excessive. Citing the testimony of their expert witness, attorney Thomas Leslie, the condemnor claims that a reasonable hourly rate in Lawrence County is $150.00 and that the rates charged by the condemnees' attorneys are consistent with rates charged by attorneys practicing

---

10. The court calculated this award based on the condemnees' attorneys' itemized records, specifically Exhibits 21 and 22 and their amended affidavits in support of reasonable attorneys fees and costs required by statute filed on behalf of the Hamiltons.

in Pittsburgh.[11] N.T., 4/23/10, at 85-86. The condemnor argues that the Lawrence County prevailing rate should govern what constitutes a reasonable rate in this dispute because the condemnation took place in Lawrence County. Furthermore, attorney Leslie testified that there are a number of attorneys in Lawrence County that could have represented the condemnees. *Id.* at 84-85. As a result, the condemnor suggests that the condemnees had no reason to go outside of Lawrence County for representation when they could have secured competent representation at a lower rate within Lawrence County.

In response, the condemnees' expert witness, attorney William Wycoff, testified that the hourly rate charged by attorney Parrish in this case is reasonable and, in some cases, lower than rates charged by other Pittsburgh attorneys in similar cases. N.T., 4/5/10, at 30-31, 128-29. In his expert report, attorney Wycoff indicated that he based this conclusion on case law as well as his own personal experience and his conversations with attorneys who have handled similar issues. Condemnees' Ex. 29. For example, attorney Wycoff referenced the *Gross* case, where the trial court found the rate of $220.00 per hour reasonable and the Commonwealth Court did not dispute that conclusion. *Gross,* 741 A.2d at 240. The condemnees argue that attorney Parrish's comparable rate should also be deemed reasonable, especially because the *Gross* case was decided several years before this matter commenced. Attorney Wycoff also testified that the condemnees' attorneys' rates should not be limited

---

11. In his expert report, attorney Leslie also indicated that the condemnor's attorney, Samuel P. Kamin, has charged a rate of $150.00 per hour in this case. Condemnor's Ex. A1C.

because the condemnation proceedings took place in Lawrence County. N.T., 4/5/10, at 32. His research led him to believe that there were no lawyers in Lawrence County with the required expertise to handle this case. condemnees' Ex. 29. Attorney Wycoff claimed that the condemnees should not be penalized for securing higher-priced counsel from Allegheny County. *Id.* He also pointed out that the condemnor went outside of Lawrence County to hire attorneys from Pittsburgh. *Id.*

After considering the evidence and expert testimony, the court concludes that the rates charged by the condemnees' attorneys are reasonable. Although $225.00 per hour may not be the prevailing rate for eminent domain attorneys in Lawrence County, attorney Parrish's rate is not so high as to be considered unreasonable. Attorney Wycoff testified and the condemnor does not dispute that attorney Parrish's fee is consistent with the fees of many other eminent domain attorneys practicing in Allegheny County. N.T., 4/5/10, at 29-32. In determining the proper hourly rate to apply, a court need not limit its consideration to hourly rates prevailing in the county in which the dispute arose. *Signora v. Liberty Travel, Inc.,* 886 A.2d 284, 294 (Pa. Super. 2005). Because both parties chose to go outside of Lawrence County to hire Pittsburgh attorneys, there is no reason not to consider the prevailing Pittsburgh rate as reasonable. The complexity of the case also warrants a rate higher than the average, prevailing rate in Lawrence County. Therefore, the court finds that the rates charged by the condemnees' attorneys are reasonable and shall be used to calculate the total amount of fees and costs incurred because of the condemnation proceedings.

In addition to disputing the reasonableness of the hourly rates charged by the condemnees' attorneys, the condemnor argues that the condemnees' attorneys billed an excessive amount of hours for certain tasks and charged the condemnees for expenses not actually incurred because of the condemnation proceedings. In its brief and arguments before the court, the condemnor identifies various categories of the condemnations proceedings where the condemnees arguably may not recover:

The court will address each category in turn.

The condemnor first argues that the condemnees may not be reimbursed for expenses incurred prior to the filing of the declaration of taking. According to the condemnor, § 306(g) does not authorize the reimbursement of counsel fees for actions taken prior to the filing of the declaration of taking. While § 306(g) does not expressly permit recovery of expenses incurred prior to the declaration of the taking, the statute does not expressly forbid it. Rather, the statute only references expenses "actually incurred because of the condemnation proceedings." 26 Pa.C.S.A. § 306(g).(1). Assuming the expenses were incurred for this purpose, "[t]he event which results in liability of the condemnor for reimbursement is the incurring of expenses[.]" *Gehris v. Com., Dept. of Transp.*, 471 Pa. 210, 216, 369 A.2d 1271, 1273 (Pa. 1977). Therefore, the court will not prohibit recovery for expenses merely because they were incurred prior to the filing of the declaration of taking.

The first category of pre-condemnation proceedings where the right to recover fees and expenses is disputed is the federal civil rights action. After the resolution authorizing the condemnation of the properties was

passed on June 23, 2004, the condemnees sought ways to prevent the condemnor from going forward with the condemnation. In July of 2004, the condemnees' attorneys attempted to enjoin the condemnor from entering and taking the condemnees' property by filing a federal civil rights action in the Western District of Pennsylvania. The condemnees' federal civil rights action was ultimately dismissed. Attorneys for the condemnees charged $170,327.45 for fees, costs, and expenses incurred on behalf of the Whittakers in the civil rights action.

The condemnees argue that filing a federal civil rights action was necessary to protect their property from the condemnor. Attorney Parrish testified that he filed the federal action in order to prevent the condemnor from moving forward with the condemnation while court proceedings were ongoing. N.T., 1/28/10, at 46. Attorney Parrish admitted, however, that the condemnor represented to the federal district court that it would not seek possession of the condemnees' properties while the state action was pending. *Id.* at 47. On cross examination, attorney Parrish also admitted that the condemnor did not have a right to possession of the condemnees' property at the time whenever the federal action was filed. *Id.* at 146. Furthermore, attorney Parrish correctly testified that the filing of preliminary objections in this court prevented the condemnor from taking possession of the property. *Id.* at 147. Therefore, the condemnees had little reason to believe that their property would be condemned while these state matters were being decided in court.

Filing preliminary objections to the declaration of taking is not only an effective means of challenging any

unlawful action of the condemnor; it is also the only method authorized by § 306 of the eminent domain code. 26 Pa.C.S.A. § 306(a) provides, in pertinent part:

(3) Preliminary objections *shall be limited to and shall be the exclusive method of challenging*:

(i)  The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.

(ii)  The sufficiency of the security.

(iii) The declaration of taking.

(iv) *Any other procedure followed by the condemnor*. 26 Pa.C.S.A. § 306(a)(3) (emphasis added).

The unambiguous language of § 306(a)(3) leaves no doubt that no other means of challenging the condemnor's actions was contemplated under this section of the statute. While the condemnees should be free to pursue all opportunities for relief in all available venues, the condemnor should not be required to reimburse the condemnees for all of their attorneys' efforts, whether reasonable or unreasonable. Filing preliminary objections to the declaration of taking prevented the condemnor from going forward with the condemnation. As a result, the federal civil rights action was unnecessary as well as unsuccessful. It would be unreasonable to require that the condemnor bear the condemnees' $170,327.45 expense of bringing the federal action.

The trial and appellate courts in *Gross* reached a similar conclusion. In that case, the condemnees' attorney sought

fees for hours spent on a federal court civil rights case, a permit case, and a tax case. *Gross*, 741 A.2d at n.16. The trial court denied the attorney's request, stating that "[w]ith regard to the federal case, a request for counsel fees must be directed to the federal court." *Gross v. City of Pittsburgh*, No. GD90-02794 (C.P. Allegheny, August 10, 1998). The Commonwealth Court agreed, stating that the condemnee "did not initiate any of these cases because of the...condemnation." *Gross*, 741 A.2d at n.16. Accordingly, the condemnees are not entitled to recover $170,327.45 in expenses associated with the federal action.

The next category of pre-condemnation proceedings where the right to recover is disputed is the equity or "right of entry" case. Prior to the filing of the declaration of taking, the condemnor sought to enter the condemnees' property in order to perform various surveys and investigations. The condemnees denied access to their property. As a result, the condemnor filed a complaint in equity, requesting that this court permit the condemnor to enter the property and enjoin the condemnees from denying the condemnor access to the property. The Whittakers were charged $8,537.00 in fees for 46.1 hours spent defending against the equity or "right of entry" case. Condemnor's Ex. A8.

The condemnor argues that it had the right to enter the property to conduct surveys and investigations and that the condemnees should not be reimbursed for interfering with that right. Regardless of the existence of such a right, the issue is whether the costs of defending the equity action were actually incurred because of the condemnation proceedings. The condemnor claims that the right of entry

case is separate from the condemnation proceedings. There is little support for the condemnor's contention. The right of entry case was initiated shortly before the declaration of taking was filed. The condemnor attempted to enter the property after a resolution was passed authorizing the condemnation. N.T., 1/28/10, at 132-33. The condemnor claimed a right to enter the property pursuant to a section of the eminent domain code. Clearly, the right of entry case was closely related if not part of the condemnation proceedings.

Furthermore, the condemnees' defense against the complaint in equity was justified. The condemnees argue that the condemnor attempted to enter the property knowing that the property was not blighted. *Id.* at 134. The Commonwealth Court agreed with the condemnees, finding that no physical conditions of blight existed. *In re condemnation by Redevelopment Auth. of Lawrence County*, 962 A.2d at 1265. In disputing the condemnor's right of entry, the condemnees properly defended against the condemnation at the earliest possible opportunity. As a result, expenses associated with defending against the complaint in equity were actually incurred because of the condemnation proceedings and are reimbursable.

The condemnor also disputes the compensability of categories of expenses incurred after the filing of the declaration of taking. The first of these involves discussions the condemnees' attorneys had with potential appraisers regarding the value of the condemnees' property. The condemnees request $17,623.00 for fees paid by the Whittakers for matters dealing with the valuation of their property. The condemnor argues that

these matters were not related to the litigation of the preliminary objections, and the costs should, therefore, not be assumed by the condemnor. The condemnees argue that a property owner is entitled to all reasonable fees that followed as a consequence of the condemnation, and not just those that lead to dismissal of the action. Because the valuation of the property to be condemned is an important part of an eminent domain proceeding, such expenses were actually incurred because of the condemnation proceedings and shall be paid by the condemnor.

The condemnor also challenges the condemnees' claim that they are entitled to fees and expenses incurred as a result of their attorneys' efforts to secure favorable tax treatment for their properties. The condemnees argue that the value of the property was enhanced by having them designated as a part of a keystone opportunity zone. Attorneys for the condemnees charged the Whittakers $15,937.50 for 89.3 hours of work on this issue. Condemnor's Ex. A. Although the condemnees receive tax breaks as a result of this designation, the condemnees do not provide any reason why these fees were incurred as a result of the condemnation proceedings. The condemnor shall not be required to pay $15,937.50 for services relating to the tax treatment of the property.

Next, the condemnor questions whether the condemnees should be compensated for challenging the sufficiency of the security posted by the condemnor.

In the underlying matter, the condemnor filed a "naked bond," which this court found to be insufficient to protect the interests of the condemnees. As a result, the court

ordered the condemnor to post security in the amounts of $2,500,000.00 for the Whittakers' property and $200,000.00 for the Hamiltons' property. The ruling was ultimately rendered moot by the Commonwealth Court's decision to sustain the condemnees' preliminary objections to the declaration of taking. The condemnees request $71,549.50 for attorney's fees paid by the Whittakers in connection with issues related to security.

The sufficiency of the security is listed as one of the grounds for preliminary objections in §306(a). 26 Pa.C.S.A. §306(a)(3)(ii). The statute governing insufficient security states:

> The court, upon preliminary objections of the condemnee under and within the time set forth in section 306(a) (relating to preliminary objections), may require the condemnor to give bond and security as the court deems proper if it appears to the court that the bond or power of taxation of the condemnor is insufficient security. 26 Pa.C.S.A. §303(c).

These provisions demonstrate the connection between preliminary objections challenging the sufficiency of the security posted and the award of reasonable fees, costs, and expenses in §306(g). The condemnees' preliminary objections, both to the declaration of taking and the sufficiency of the security, were filed in response to and in order to terminate the condemnation. Both preliminary objections were ultimately sustained and the condemnation was terminated. Clearly, the fees, costs, and expenses related to the security issue were incurred because of the condemnation proceedings. Therefore, the fees, costs, and expenses related to the Whittakers' challenge to

the adequacy of the security should be awarded to the condemnees.

The condemnor also attempts to decrease the amount of the condemnees' potential fee award by claiming that expenses related to discussions with witnesses who did not testify at trial are not reimbursable. Specifically, the condemnor asserts that the condemnees' attorneys billed the Whittakers $8,736.50 for 40.4 hours related to discussions with Dennis Cestra, William Yoder, and Keefe Ellis. These witnesses were consulted in preparation for trial. Although Mr. Cestra and Mr. Yoder did not testify and Mr. Ellis was not permitted to give his opinions on certain matters, the condemnees' attorneys no doubt gained valuable insight into the condition of the condemnees' property through discussions with these witnesses. Therefore, it was not unreasonable to incur expenses by consulting with these witnesses in preparation for the condemnation proceedings.

The condemnor challenges the inclusion of expenses incurred in connection with the quo warranto proceeding. The condemnees initiated a quo warranto proceeding on June 7, 2007 in an effort to dissolve the condemnor. The Whittakers were charged $6,645.50 for fees incurred in connection with this proceeding. The condemnees initiated the quo warranto proceedings shortly before this court issued its June 15, 2007 decision regarding the preliminary objections. As a result, the court's decision on the preliminary objections was still pending when the condemnees' attorneys chose to incur additional expenses. Had the court issued a decision on the preliminary objections that was favorable for the condemnees, the

quo warranto proceeding would have been unnecessary. Therefore, it was unreasonable at the time to incur additional expenses by initiating the quo warranto proceeding, and the condemnor should not be required to reimburse the condemnees for their attorneys' attempt to dissolve the condemnor prior to the court's decision.

The condemnor does not dispute that the condemnees are entitled to a fee award for the remaining expenses incurred in the performance of certain tasks. Instead, the condemnor argues that the condemnees' attorneys billed an unreasonable and excessive number of hours for these tasks. With respect to the 12-day hearing, the condemnees' attorneys charged the Whittakers $13,984.00 for 70.9 hours spent working on a pre-trial brief, $149,687.50 for 774.5 hours spent preparing for the hearings, and $42,924.50 for 227.9 hours spent drafting findings of fact and conclusions of law. The court has concerns about the number of hours billed for these tasks: 774.5 hours for trial preparation appears excessive considering, for example, that the condemnees' attorneys worked over 200 hours during February of 2006, a month when no hearing took place. Moreover, it is hard to imagine needing to spend 227.9 hours preparing findings of fact and conclusions of law after spending 774.5 hours preparing for trial and 70.9 hours researching the law while drafting a pre-trial brief. These figures appear even more unwarranted when the court considers that the condemnees' attorneys are also requesting $73,800.00 for 394 hours of work done for the same tasks on behalf of the Hamiltons. However, the court recognizes that this case involved several unique issues where a difficult burden was placed upon the condemnees. There was undoubtedly a significant amount of work

required to prepare for the segmented 12-day hearing, and the condemnees' ultimately secured a favorable result for their clients. Therefore, the court will award these requested fees, costs, and expenses incurred on behalf of the Whittakers, as these expenses were clearly incurred because of the condemnation proceedings.

Next, the condemnees request compensation for fees, costs, and expenses associated with their appeal following this court's twelve-day hearing. The Whittakers were billed $47,821.00 for 223.9 hours spent working on the condemnees' appeal. The court recognizes that the condemnees' had a right to appeal this court's determination regarding the preliminary objections and that the condemnees were ultimately successful on that appeal. Therefore, the court will also not question the requested expenses associated with their appeal.

The court also recognizes that the condemnees were entitled to contest the condemnor's petition for the appointment of viewers. On June 15, 2007, this court ordered the parties to apply for the appointment of a board of viewers. The condemnor complied with the court's order, and the condemnees subsequently filed preliminary objections to the condemnor's petition for the appointment of a board of viewers. The condemnees primary argument was that the court lacked jurisdiction to appoint a board of viewers while an appeal of the court's June 15, 2007 order was pending. The condemnees were justified in making such an argument and should be compensated for attempting to prevent the condemnation from going forward. Furthermore, briefs were filed in this matter, and the condemnor filed preliminary objections to the condemnees' preliminary objections. As a result,

the condemnees' request of $17,901.00 for fees paid by the Whittakers in connection with this aspect of the proceedings is not unreasonable.

Similarly, the court accepts the condemnees' assertion that they are entitled to $4,926.00 incurred in connection with the revesting of title. The condemnees filed a contested motion to revest title because the preliminary objections were sustained and because the Lawrence County Economic Development Corporation had recorded a final plan in the Lawrence County Recorder's Office indicating that it owned the Whittakers' property. The condemnees were justified in pursuing the issue because it was necessary to protect the property from condemnation. Therefore, the expenses incurred in connection with this matter will not be deducted from the condemnees' fee award.

Finally, the condemnees seek reimbursement in the amount of $187,793.35 for fees charged for the preparation of the instant motion for fees and costs pursuant to statute and the litigation related to it, which included three full-day hearings, arguments in motions court, preparation of numerous exhibits, and drafting of findings of fact and conclusions of law. The condemnees are, for the most part, entitled to the expenses incurred during the fees litigation. *In re Condemnation by the Commonwealth, Department of Transportation*, 709 A.2d at 944 ("condemnees are entitled to recover any and all additional attorney's fees actually incurred by them due to the condemnation up to the date that this matter is finally ended, including...the attorney's fee claims"). However, the court will not award fees and expenses for certain work related to the challenging of the condemnor's

request for discovery. Specifically, expenses incurred as a result of the condemnees' efforts to avoid producing their attorneys' time sheets in electronic form should not be reimbursed. These records of fees and costs incurred were essential to the condemnor's ability to challenge and the court's ability to ascertain the reasonableness of the condemnees' request for reimbursement. As a result, the condemnees were required to produce these records, and any expenses incurred in delaying production of the records will not be compensated. By the court's calculation, the Whittakers were billed $8,744.00 for work that could have been avoided had their attorneys complied with the condemnor's original request. Therefore, $8,744.00 will be deducted from the condemnees' total award.

As stated above, the condemnees request an award of $806,096.01 for fees, costs, and expenses incurred on behalf of the Whittakers. The condemnees will receive a substantial portion of their requested award, as they are entitled to reasonable fees, costs, and expenses incurred because of the condemnation proceedings under 26 Pa.C.S.A. §306(g). However, this opinion identifies fees and expenses which were either not incurred because of the condemnation proceedings or were not reasonable in light of the work performed. These expenses, which will be deducted from the condemnees' original request, include those incurred as a result of the federal civil rights action ($170,327.45), the attempts to secure certain tax treatment for the condemnees' property ($15,937.50), the quo warranto proceeding ($6,645.50), and the challenge to the condemnor's request for discovery of time records ($8,744.00). Deduction of these fees results in an award of $604,441.56 for fees, costs, and expenses incurred on

behalf of the Whittakers.

Accordingly, the condemnees' motion for fees and costs pursuant to statute is granted in part and denied in part, and the condemnor shall pay $659,033.51 for reasonable fees, costs, and expenses incurred because of these condemnation proceedings.

## ORDER OF COURT

And now, December 17, 2010, the court having received the condemnees' motion for fees and costs pursuant to statute and hearings having been held on said motion on January 28, 2010, April 4, 2010, and April 23, 2010, with Thomas T. Frampton, Esquire, Michael K. Parrish, Esquire, and Jeffrey R. Hunt, Esquire, appearing and representing the condemnees, and Samuel P. Kamin, Esquire and John J. Arminas, Esquire, appearing and representing the condemnor, the court finds and it is hereby ordered, adjudged and decreed as follows:

1. The condemnees' motion for fees and costs pursuant to statute is granted in part and denied in part pursuant to the attached opinion.

2. The condemnor shall pay the Whittakers $604,441.56 for fees, costs, and expenses incurred.

3. The condemnor shall pay the condemnees' attorneys $54,591.95 for fees, costs, and expenses incurred on behalf of the Hamiltons.

4. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.